UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN HANSEN,<br>                          Defendant. | 5:23-CR-50054-RAL-1<br><br>OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

Defendant John Hansen filed a pro se Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 118. Hansen argues his request for compassionate relief should be granted due to extraordinary and compelling reasons, citing his ongoing health issues and problems in receiving medical care. Doc. 118. The United States opposes Hansen's motion. Doc. 120. For the reasons discussed, Hansen's motion is denied.

I.   **Facts and Procedural History**

Hansen is serving a 121-month custody sentence, with five years of supervised release. Doc. 102. Hansen is housed presently at Federal Prison Camp Florence, and his projected release date is February 25, 2031. Inmate Locator, BOP, https://www.bop.gov/inmateloc (last visited Jan. 16, 2026). Hansen is 66 years old. Doc. 118 at 1. Hansen's charges arose from his role in arranging for and transporting large quantities of fentanyl from Colorado into South Dakota. Doc. 97 at 4–8. Hansen ultimately pleaded guilty to violations of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Docs. 77, 79. Based on case information, the presentence investigation determined

1

Hansen was an organizer or a leader. Doc. 97 at 9. Hansen's total offense level was 31, and his criminal history placed him in Criminal History Category II. Id. at 20. Therefore, Hansen faced a guideline imprisonment range of 121 to 151 months and a statutory minimum term of imprisonment of 10 years under 21 U.S.C. § 841(b)(1)(A). Id. This Court sentenced Hansen to 121 months' imprisonment, which it noted was the bottom end of the guidelines range and just one month longer than the mandatory minimum, followed by 5 years of supervised release. Doc. 102 at 2–3; Doc. 102-1 at 2.

Hansen suffers from multiple medical conditions, some of which relate to his time serving in the United States Army. See Doc. 97 at 17, 19; Doc. 119. The presentence investigation report notes Hansen underwent two back surgeries and has kidney stones, heart attacks resulting in the placement of stints, diabetes, spinal stenosis, cataracts, and neuropathy in his hands and feet. Doc. 97 at 17. Hansen reported that doctors had recommended he receive additional surgeries on his lower back, wrists, and right eye. Id. In his present motion, Hansen highlights the following medical conditions: (1) progressive diabetes deterioration with serious complications; (2) high-risk cardiovascular disease; and (3) critical drugs allergies. Doc. 118 at 4–6.

Hansen argues that he is eligible for compassionate release because his medical conditions qualify as an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(1)(C). Doc. 118 at 4. Specifically, he argues that (1) the Bureau of Prisons (BOP) did not follow this Court's recommendation that Hansen be placed at a Federal Medical Center to treat his medical needs and instead placed him "at Federal Prison Camp Florence—a minimum-security facility providing only basic medical care wholly inadequate for his life-threatening conditions"; (2) he suffers from multiple medical conditions that cannot be properly treated in his correctional setting; and (3) his status as a 100% disabled veteran increases his medical needs that cannot be met by the BOP. Id.

at 1–2. The United States opposes a grant of compassionate release and argues that Hansen is being provided with adequate medical care. Doc. 120.

## II. Discussion

### A. Exhaustion Requirement

Sentences are final judgments, and under ordinary circumstances, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see also United States v. Olson, No. 3:19-CR-30133, 2021 WL 4478031, at *1 (D.S.D. Sept. 30, 2021). However, 18 U.S.C. § 3582(c)(1)(A) provides an exception. Section 3582(c)(1)(A), as amended by the First Step Act of 2018, allows district courts to consider and decide motions seeking what is commonly called "compassionate release."

Before a district court can consider a First Step Act motion, an inmate must satisfy a statutory exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). This requirement is met if (1) the prisoner has fully exhausted all administrative rights to appeal the BOP's failure to file a motion on the prisoner's behalf or (2) 30 days have passed from the receipt of such a request by the warden of the prisoner's facility, whichever is earlier. Id. Hansen requested compassionate release based on his medical circumstances from FCI Florence Warden D. Jones, which Warden Jones denied on May 19, 2025. Doc. 118-1. The United States concedes that Hansen has exhausted his administrative remedies. Doc. 120 at 4. Because Hansen has satisfied the exhaustion requirement, this Court considers the merits of Hansen's motion.

### B. Extraordinary and Compelling Reasons

Under § 3582(c)(1)(A), a district court may grant a prisoner's motion for a reduced sentence after the Court finds (1) that extraordinary and compelling reasons exist and warrant such

a reduction;[1] (2) those reasons are consistent with the applicable policy statement promulgated by the United States Sentencing Commission, here U.S.S.G. § 1B1.13; and (3) an examination of the 18 U.S.C. § 3553(a) sentencing factors supports a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i)–(ii). Congress did not define "extraordinary and compelling reasons." See 28 U.S.C. § 994(t). Instead, Congress charged the Sentencing Commission with issuing general policy statements outlining the "appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c)," including "what should be considered extraordinary and compelling reasons for sentence reduction [and] the criteria to be applied." Id. § 994(a)(2)(C), (t).

Effective November 1, 2023, the Sentencing Commission updated the criteria for what constitutes "[e]xtraordinary and compelling reason[s]" to reduce a term of imprisonment. U.S.S.G. § 1B1.13(b). As amended, "[e]xtraordinary and compelling reasons exist under any of the following circumstances or [through] a combination thereof": (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) being a victim of sexual or physical abuse while in custody, (5) other reasons with equal gravity as the aforementioned circumstances, and (6) unusually long sentences. Id. A "district court has broad discretion in determining whether proffered circumstances warrant" compassionate release under the First Step Act. United States v. Loggins, 966 F.3d 891, 893 (8th Cir. 2020).

In determining whether Hansen's medical conditions and treatment constitute extraordinary and compelling reasons to reduce his sentence, this Court takes guidance from the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13(b)(1).[2] The Sentencing

---

[1] A court could also grant a reduced sentence if the defendant is at least 70 years old and has served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). Hansen does not meet these criteria.

[2] Hansen does not present any other "extraordinary and compelling" reasons as provided in U.S.S.G. § 1B1.13(b)(2)–(6). See Doc. 118. In an attached letter to this Court, Hansen mentions

Commission identified specific criteria for when a defendant's medical circumstances constitute an extraordinary and compelling reason to reduce his or her sentence:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>   (i) suffering from a serious physical or medical condition,
>   (ii) suffering from a serious functional or cognitive impairment, or
>   (iii) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—
>   (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>   (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>   (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1). Hansen argues the evidence demonstrates an "extraordinary and compelling" reason under the definition given in § 1B1.13(b)(1)(C); specifically, the "defendant is suffering from a medical condition that requires long-term or specialized medical care that is

---

being a previous caretaker for his autistic son, who is now being cared for by Hansen's former partner. Doc. 118-2 at 1. Hansen also writes that he was assaulted by BOP staff at FCI Englewood. Id. at 2. However, Hansen has not moved for compassionate release under § 1B1.13(b)(3) or (b)(4). Therefore, the analysis is constrained to § 1B1.13(b)(1).

not being provided and without which the defendant is at risk of serious deterioration in health or death." See Doc. 118 at 3. Hansen does not argue that he qualifies under any of the alternate definitions provided in (b)(1), so this Court focuses on subsection (C).

As noted above, Hansen focuses on three medical conditions: (1) Type 2 diabetes mellitus with diabetic neuropathy that has deteriorated during incarceration; (2) extensive cardiovascular disease including chronic ischemic heart disease with prior myocardial infarction, coronary artery stenting, atherosclerosis, and poorly controlled hypertension; and (3) severe drug allergies that create critical limitations on medical treatment. Doc. 118 at 5–7. Hansen is a Care Level 2 patient. Doc. 119 at 70. Care Level 2 patients are "stable outpatients who require clinician evaluations monthly to every 6 months," and "[t]heir medical and mental health conditions can be managed through routine, regularly scheduled appoints with clinicians for monitoring." Care Level Classification for Medical and Mental Health Conditions or Disabilities, BOP, 2 (May 2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf. A chronic condition is one "that requires monitoring or treatment for greater than 12 months." Id. at 3.

Chronic conditions that can be managed by the BOP are not, by themselves, a basis for compassionate release. See, e.g., United States v. Hodgin, No. 4:15-CR-40110-02, 2021 WL 928179, at *4 (D.S.D. Mar. 11, 2021), aff'd, No. 21-1848, 2021 WL 8129594 (8th Cir. Apr. 20, 2021) (denying compassionate release where defendant's chronic "conditions appear[ed] to be stable and appropriately managed" and there was "no evidence currently suggesting the medical staff is failing to care for those conditions" (citing United States v. Ayon-Nunez, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020))). Hansen relies on recent out-of-circuit district court decisions granting compassionate release due to inadequate medical care of chronic conditions. See Doc. 118 at 9. In Bovis, cited by Hansen, the court granted compassionate release "where BOP failed

6

to fill defendant's blood pressure prescription, defendant subsequently suffered two serious medical incidents, and the court determined that defendant would likely suffer brain damage or death if these issues were to continue." United States v. Singh, No. 2:13-CR-00084, 2025 WL 1808413, at *4 (E.D. Cal. July 1, 2025) (citing United States v. Bovis, No. 20-cr-00204 (N.D. Cal. Mar. 6, 2025), Doc. 459-1). In Sosa, another case Hansen relies upon, the court granted compassionate release for a 72-year-old man suffering from uncontrolled hypertension, stage 3 chronic kidney disease, elevated prostate specific antigens indicative of a heightened risk of prostate cancer, and hyperlipidemia where the defendant had been recently hospitalized and his medical records indicated rapid advancement of the conditions, including being "LIKELY headed to dialysis and renal failure." United States v. Sosa, No. 2:20-CR-0073, 2023 WL 9002764, at *1–3 (D. Utah Dec. 28, 2023).

This Court recognizes that there have been delays in Hansen's medical care during his incarceration. Medical records from FCI Florence reveal that despite being "diagnosed with diabetic neuropathy," Hansen "does not have diabetic shoes" as of September 2025, almost two years after arriving at the BOP. Doc. 119 at 2. Hansen reported being at a 7 of 10 pain level "constantly." Id. Medical records show that the medical staff scheduled a target date of November 5, 2025, to fit Hansen with diabetic shoes, but the BOP record, last updated in mid-September 2025, does not indicate if Hansen received those shoes. Id. at 4. In addition, medical records also show that Hansen has not yet had his cataract treated, and that he will not receive glasses until receiving surgery on his cataract. Id. at 8; but see id. at 43 (indicating Hansen received glasses on February 11, 2025). Medical staff referred Hansen to an ophthalmologist for a consultation about his cataract with a target date of September 26, 2025, but the record does not indicate if Hansen had the consult or the surgery. Id. at 8. However, Hansen has not yet experienced medical events

7

akin to the hospitalizations in <u>Bovis</u> or <u>Sosa</u> that substantiate a risk of serious deterioration in health or death as envisioned by § 1B1.13(b)(1)(C).

If the BOP fails to undertake necessary treatment steps and information establishes that the impact of that failure presents a risk of serious deterioration in health or death, this Court's ruling will be different. However, this Court cannot find on this record that "long-term or specialized medical care [] is not being provided [] without which the defendant is at risk of serious deterioration in health or death." <u>Id.</u> The record reflects pending future care appointments. Doc. 119 at 4, 8. Other conditions that Hansen describes, such as his extensive cardiovascular disease and his drug allergies, are being treated and monitored as documented throughout the medical paperwork. <u>See id.</u> at 1–40 (listing notes from physical examinations), 21 (discussing Hansen's concerns with taking certain medications and its effect on his ability to transfer to a camp), 45 (noting Hansen's pain levels), 49–50 (listing current health problems), 53–64 (listing medications and medication allergies as well as results of labs). Therefore, the BOP's treatment of Hansen's medical conditions does not qualify as an extraordinary and compelling reason qualifying for compassionate release at this time. <u>See</u> <u>United States v. Martin</u>, No. 5:19-CR-50167, 2024 WL 1257174, at *4 (D.S.D. Mar. 25, 2024), <u>aff'd</u>, No. 24-1805, 2024 WL 4562625 (8th Cir. Apr. 19, 2024) ("While in BOP's custody, Martin's prescriptions have been monitored and altered as necessary to meet his treatment needs . . . [and] Martin receives regular counseling about access to care, plan of care, diet, exercise, weight loss, compliance with treatment, hygiene, and other issues.").

Hansen presents concerns about his BOP placement, but this Court does not control where BOP chooses to place defendants after sentencing. <u>See</u> 18 U.S.C. § 3621(b). Without documentation of inadequate medical treatment at FCI Florence, this Court cannot find Hansen's

placement there to be an extraordinary and compelling reason qualifying for compassionate release. Finally, although this Court appreciates Hansen's Army service to this country and how it has impacted his health throughout his life, Hansen's veteran status alone does not qualify as an extraordinary and compelling reason qualifying for compassionate release.[3]

### C. Section 3553(a) Sentencing Factors

Although a court need not consider the § 3553(a) factors when there are no extraordinary or compelling reasons to reduce a sentence, United States v. Brown, No. 4:18-CR-40138, 2023 WL 3340257 (D.S.D. May 10, 2023), a review of the § 3553(a) factors weighs against granting compassionate release to Hansen. The § 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines ....

---

[3] The U.S. Sentencing Commission found that "[o]ver 10,000 veteran offenders were in the custody of the Federal Bureau of Prisons at the end of 2019, accounting for almost six percent of all BOP inmates," and compiled research analyzing how to best address the high number of and specialized needs presented by veterans in the federal criminal justice system. Glenn R. Schmitt & Amanda Kerbel, Federal Offenders Who Served in the Armed Forces, U.S.S.C., 7 (Oct. 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211028_armed-forces.pdf. One of the key findings of the Commission was that "[t]he most common crime type committed by both veteran offenders and citizen offenders overall was drug trafficking (25.0% and 37.6%, respectively)." Id. at 9. The Commission also found in their study that "the average length of time between separation from the military and the sentence for the federal offense was 23 years." Id. Hansen fits this profile, having served during the Gulf War and Operation Desert Storm in the 1990s before his second honorable discharge and subsequent federal drug trafficking offense for conduct which began in 2022. See Doc. 97 at 3, 19.

9

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). These factors inform the Court's duty to ensure the sentence imposed is "'sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)[ ]." Pepper v. United States, 562 U.S. 476, 491 (2011).

The nature and circumstances of the offense weigh against granting Hansen compassionate release. Hansen was involved in a conspiracy to distribute large quantities of fentanyl and brought large quantities of fentanyl from Colorado to South Dakota. Doc. 97 at 3–4. Hansen was an organizer or a leader of the enterprise, which also involved his daughter. Id. at 6, 9, 16. Though the precise quantity Hansen distributed is unknown, Hansen admitted that it was reasonably foreseeable to him that at least 400 grams but less than 1.2 kilograms of fentanyl would be distributed during the course of the conspiracy. Doc. 68 at 2.

Hansen's personal history and characteristics neither favor nor disfavor granting compassionate release. After being adopted from South Korea at a young age, Hansen endured an abusive childhood at the hands of his adoptive parents. Doc. 97 at 15. Hansen was removed from their care and ended up in the foster care system until his eighteenth birthday. Id. Hansen enlisted in the U.S. Army twice and was honorably discharged both times. Id. at 19. Hansen turned to substances to deal with the trauma he has experienced. Id. at 17–18. Hansen has been married twice, and has six children from the two relationships, one of whom was Hansen's co-defendant in the underlying criminal case. Id. at 6, 15–16. Hansen was also in a long-term relationship with another woman, and there was history of altercations that resulted in physical contact and legal charges. Id. at 16. Hansen to his credit has not had any disciplinary history and has completed several education courses while incarcerated. See Doc. 119 at 68–71.

Hansen has a lengthy criminal history that includes convictions for theft, simple assault (domestic violence), a 2016 attempted manufacturing and distributing of drugs state felony conviction, as well as a 2015 federal conviction for a violation of 18 U.S.C. § 922(g) from the District of South Dakota, for which Hansen received a three-year probationary sentence. Doc. 97 at 10–13. The 121-month sentence imposed accounted for the need for the sentence to reflect punishment, deterrence, and protection of the public from further crimes of the defendant. As the United States notes, Hansen has only served roughly a quarter of his sentence. Doc. 120 at 9 (citing Doc. 119 at 74). Given Hansen's history, he poses some danger to the community, although that risk should decline as he ages and is on supervised release.

A sentencing judge must also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment. 18 U.S.C. § 3553(a)(2)(A)–(C). Considering these factors, the original 121-month sentence remains appropriate. After reviewing the record of this case in light of the remaining § 3553(a) factors, including the kinds of sentences available, the need to avoid unwarranted sentencing disparities, and the need to provide educational, vocational, or correctional treatment in the most effective manner, this Court concludes that these factors are not served by a reduced sentence. Therefore, it is

ORDERED that Hansen's motion for compassionate release, Doc. 118, is denied.

DATED this 28th day of January, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE